IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandra Division

| | |
|---|---|
| CAITLIN G.,[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRANK J. BISIGNANO,[2] ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:24-cv-1626 (CMH/LRV) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. (Dkt. Nos. 4, 7.) Pursuant to 42 U.S.C. § 405(g), Caitlin G. ("Plaintiff"), proceeding *pro se*, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying her claim for disability insurance benefits ("DIB") under the Social Security Act. The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") and Appeals Council for the Office of Appellate Operations ("Appeals Council") that Plaintiff was not disabled as defined by the Social Security Act and applicable regulations. For the reasons stated below, the undesigned recommends that the Court **DENY** Plaintiff's Motion for Summary

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted for Carolyn Colvin as a defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Judgment, **GRANT** Defendant's Motion for Summary Judgment, and **AFFIRM** the final decision of the Commissioner.[3]

I.  **PROCEDURAL BACKGROUND**

On February 24, 2022, Plaintiff applied for DIB with an alleged onset date of December 15, 1999 due to the following impairments: traumatic brain disease ("TBI"), chronic fatigue syndrome, chronic adjustment disorder, fistula, fibromyalgia, and sleep issues. (AR 99, 104.) Plaintiff's date last insured was December 31, 2004, making the relevant period for this case December 15, 1999 through December 31, 2004.[4] On May 26, 2022, the Social Security Administration ("SSA") denied Plaintiff's application. (AR 122.) Plaintiff requested reconsideration of the denial, and on October 27, 2022, the SSA affirmed its denial. (AR 127.)

Plaintiff then requested a hearing before an administrative law judge. (AR 176.) On August 17, 2023, ALJ Eric Eklund conducted a hearing in Richmond, Virginia. (AR 28.) During the hearing, Plaintiff and her husband provided testimony and answered questions posed by the ALJ. (AR 28–91.) Katherine Young, a vocational expert, also answered questions from the ALJ. (*Id.*) On November 22, 2023, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. (AR 8–23.) Plaintiff requested that the Appeals Council review the ALJ's decision, and on July 18, 2024, the Appeals Council denied Plaintiff's

---

[3] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (*See* Dkt. No. 3.) In accordance with those rules, this recommendation excludes any personal identifiers such as Plaintiff's social security number and date of birth (except for the year of birth). The discussion of Plaintiff's medical information is limited to the extent necessary to analyze the case.

[4] The SSA's DIB program is similar to other insurance programs in that, to qualify, a claimant must have coverage, i.e., be fully insured, at the time of disability. 42 U.S.C. § 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a). The coverage period for an individual extends to her date last insured, which is the last day she is eligible for DIB. *Id.* Accordingly, for purposes of DIB, Plaintiff must prove that she was disabled by the date last insured in order to qualify for DIB.

2

request, finding no reason under its rules to review the ALJ's decision. (AR 1–5.) Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff was given sixty days to file a civil action challenging the decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

On September 16, 2024, Plaintiff filed this civil action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) On November 15, 2024, Defendant filed the Administrative Record. (Dkt. No. 3.) On December 16, 2024, Plaintiff filed a document titled "Plaintiff's Brief," which the undersigned construes as Plaintiff's Motion for Summary Judgment and supporting memorandum. (Dkt. No. 4.) On December 20, 2024, Defendant filed a Consent Motion for Extension of Time to File Motion for Summary Judgment; the Court granted the motion that same day. (Dkt. Nos. 5, 6.) On January 22, 2025, Defendant filed an opposition to Plaintiff's brief and a Motion for Summary Judgment. (Dkt. Nos. 7, 8.) On February 11, 2025, Plaintiff filed a reply. (Dkt. No. 11.) Neither party requested a hearing. (*See* Dkt. No. 9.) The parties' motions are thus ripe for disposition.

## II.     FACTUAL BACKGROUND

### A.     Summary of Evidence Before the ALJ

#### 1.     Plaintiff's Background

The following is a summary of the relevant evidence before the ALJ.[5] Plaintiff was 35 years old when she initially alleged disability due to TBI, chronic fatigue syndrome, chronic adjustment disorder, fistula, fibromyalgia, and sleep issues. (AR 99.) Plaintiff was 40 years old as of her date last insured. (*Id.*) Plaintiff graduated from college and law school. (AR 41–42.)

---

[5] The AR contains more than 1,400 pages of medical records from various sources relating to Plaintiff's medical treatments. This summary provides an overview of Plaintiff's medical treatments and conditions relevant to her appeal and is not intended to be an exhaustive list of every medical treatment.

Plaintiff previously served in the Army and Coast Guard. (AR 44.) On September 18, 2000, Plaintiff requested medical discharge and severance pay from the Coast Guard. (AR 998–99.)

### 2. Relevant Medical Record

#### a) *Chronic Fatigue Syndrome*

On February 17, 1999 (prior to the relevant period), Plaintiff attended an appointment with Dr. Evans at the Wilford Hall Medical Center. (AR 965–66.) Dr. Evans noted that Plaintiff met some of the criteria for possible chronic fatigue syndrome. (AR 965.) Dr. Evans further noted that Plaintiff had mental symptoms that were treated, and that she resumed full activity and did well on the job. (AR 965–66.) As of April 1999, Plaintiff was being treated with Zoloft and over-the-counter Motrin for chronic fatigue syndrome and fibromyalgia. (AR 970.) As of September 1999, Plaintiff continued to take Zoloft for her chronic fatigue syndrome. (AR 974.)

The relevant period commenced on December 15, 1999. At an outpatient/primary care visit on May 3, 2000, Plaintiff reported chronic fatigue symptoms "that began many years prior but [had] exacerbated" within the past year "to the point of not being able to function." (AR 435.) Cynthia Helwig, Nurse Practitioner, noted that Plaintiff was being treated with Zoloft for chronic fatigue symptoms. (*Id.*) Ms. Helwig further noted that Plaintiff had "cut back" on Zoloft but still experienced bad dreams and falling asleep during the day. (*Id.*) Ms. Helwig's examination findings showed that Plaintiff had 5/5 strength and a steady gait. (AR 436.)

#### b) *Fistula*

On March 9, 2020, Plaintiff attended an appointment with Dr. Kathryn L. Rutan regarding an anal fistula. (AR 484; *see also* AR 1176.) Plaintiff reported that the condition existed "since 1994," and that she had two "repairs" but was not sure of the exact procedures. (*Id.*; *see also* AR 100 ("[Plaintiff] has history of anal fistula and underwent repair in 1995 and 1996.") Plaintiff

4

further reported that colonoscopies caused flares and infections that she would like to prevent, but that she was not seeking surgical intervention at the time. (*Id.*) In addition, Plaintiff's hemorrhoids were found to be mild, and the fistula was unaccompanied by signs or symptoms consistent with cancer. (AR 485.)

### c) *Vision Issues*

During an appointment for an eye exam on February 24, 2012, Plaintiff reported that she had been having a hard time "over the past few years" finding a prescription she liked. (AR 581.) As of the February 24, 2012 appointment, Plaintiff's vision was correctable to 20/20. (*Id.*)

### 3.   State Agency Medical Opinion Evidence

State agency medical physicians Michael Koch, M.D. and Bert Spetzler, M.D. independently reviewed the medical record at the initial and reconsideration administrative levels of review. (AR 101, 107.) Specifically, on May 25, 2022, Dr. Koch found that there was "some evidence in file from the relevant time period, but there is no evidence available for a determination to be made on the severity of [Plaintiff's] impairments," and further, that there was "insufficient evidence in file to make a medical decision." (AR 101.) On October 26, 2022, Dr. Spetzler found that there was "some evidence in file from the relevant time period, but there is no evidence available for a determination to be made on the severity of [Plaintiff's] impairments," and further, that there was "insufficient evidence in file to make a medical decision." (AR 107.)

### 4.   Administrative Hearing Testimony

Plaintiff was unrepresented at the August 17, 2023 hearing before the ALJ. (AR 31.) When asked by the ALJ to describe the "most significant and limiting physical mechanical condition" that would have interfered with Plaintiff's ability to work during the relevant period, Plaintiff testified that "it was the head injuries that then triggered the chronic fatigue and the anger issues."

(AR 47.) When asked if she had problems with her vision during the relevant period, Plaintiff testified that she "reported it over and over again to military medicine and the VA," but that she "did pass the vision screening for flight school." (AR 49.) In addition, Plaintiff testified that she "t[old] people [she] lost [her] color vision initially after the head injury," but that her color vision "came back within hours." (AR 49, 50.) When asked if she had "any significant physical limitations from the fistula" or "receive[d] any treatment ... for the fistula" during the relevant period, Plaintiff testified that she underwent "[s]urgeries" and was also "restricted to not flying a real aircraft," i.e., to "a simulator." (AR 51.) Moreover, "when the fistula got really bad, the lymph nodes on the left side of [Plaintiff's] neck would enlarge," making it difficult for Plaintiff to check her left-hand mirror when driving. (AR 53.) Plaintiff further testified that she was neither diagnosed with nor received treatment for any psychological conditions during the relevant period. (AR 57.) When asked if she had ever been diagnosed with fibromyalgia, Plaintiff testified that she "was told in '98 that [she] probably had it," but was not formally diagnosed until April 2024. (AR 64.) The ALJ also asked Plaintiff about her activities of daily living. (AR 65.) Plaintiff testified that she swims, does laundry, and gardens. (AR 65–71.)

Plaintiff's husband, Daniel G., testified as a witness on Plaintiff's behalf. When asked by the ALJ to "characterize [Plaintiff's] most significant physical limitation," Mr. G. responded that Plaintiff's "most significant physical limitation would be her vision problems." (AR 78.) As to Plaintiff's vision issues, Mr. G. testified that Plaintiff had "normal eye exams" during the relevant period, and that Plaintiff's vision issues were identified for the first time "just in the past couple of years." (AR 78–79.) Plaintiff later clarified that her vision issues were identified "[l]ast year," and that "the vision stuff wasn't really noticeable until later, not 1999 to 2004 ...." (AR 78, 85.)

6

Mr. G. further testified that during the relevant period, Plaintiff's other physical limitations included fatigue and weakness in her hands. (AR 78, 80.)

Vocational expert Katherine Young also testified during the hearing. The ALJ asked Ms. Young to consider an individual with Plaintiff's age, education, and work experience who could perform a full range of work with the additional limitations of occasional sitting; no climbing ladders, ropes, or scaffolds; avoid moving machinery on the work floor; avoid unprotected heights; no driving in the work setting; and being off-task five to ten percent of the workday. (AR 87–88.) Ms. Young testified that such an individual would be able to perform the representative medium, unskilled jobs of hand packager, laborer (stores), and patient transporter. (*Id.*) The ALJ then asked what effect, if any, the additional limitation of looking at a computer screen for no more than 30 minutes in an eight-hour workday would have on the availability of jobs. (AR 88.) Ms. Young testified that such an individual would be able to perform the representative medium, unskilled job of hand packer, as well as the jobs of cleaner II and dining room attendant. (AR 89.) Ms. Young further testified that if the hypothetical individual consistently missed at least two days of work a month, the individual would not be able to maintain employment. (*Id.*)

B.   **The ALJ's Decision**

The Social Security Act and its implementing regulations place the burden of proving disability on Plaintiff. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are . . . disabled."). On November 28, 2023, the ALJ issued a decision that Plaintiff was not disabled under the Social Security Act from her alleged onset date of December 15, 1999 through her date last insured of December 31, 2004. (AR 12.) To evaluate Plaintiff's

claim of disability, the ALJ followed the sequential five-step analysis set forth in the SSA's regulations. *See* 20 C.F.R. § 404.1520(a). Specifically, the ALJ considered whether Plaintiff: (1) was performing substantial gainful activity during her period of alleged disability; (2) had a severe impairment; (3) had an impairment (or combination of impairments) that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; or (5) could perform other work that exists in significant numbers in the national economy. (AR 8–23.)

The ALJ's decision includes the following findings of fact and conclusions of law.[6] At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 1999 through her date last insured of December 31, 2004." (AR 13 (citing 20 C.F.R. §§ 404.1571 *et seq.*).)

At step two, the ALJ found that Plaintiff had the following severe impairments: "history of traumatic brain injury in 1985, chronic fatigue, history of perianal fistula status post resection, light and peripheral motion sensitivity." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) The ALJ also noted "that there is more recent evidence of treatment for fibromyalgia, anxiety, and PTSD," but that there is "no evidence that these conditions were diagnosed by an acceptable medical source prior to December 31, 2004." (*Id.*) Accordingly, the ALJ concluded that Plaintiff's "fibromyalgia and mental impairments were not medically determinable and warrant[ed] no further evaluation . . . ." (AR 14.)

---

[6] In addition to the findings of fact and conclusions of law described above, the ALJ also found that: (1) Plaintiff last met the insured status requirements of the SSA on December 31, 2004; (2) Plaintiff was born in 1964 and was 40 years old, which is defined as a younger individual, on the date last insured, *see* 20 C.F.R. § 404.1563; (3) Plaintiff has at least a high school education; and (4) transferability of job skills is not an issue because Plaintiff does not have past relevant work. (AR 13–19.)

At step three, the ALJ found that Plaintiff, through the date last insured, "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] was limited to no more than occasional sitting. She could never climb ladders, ropes, or scaffolds. [Plaintiff] must have avoided machinery on the work floor and unprotected heights. She could not drive in a work setting. [Plaintiff] would be off task up to 5% of any given workday due to fatigue and focus issues. Finally, she could look at a computer screen for no more than 30 minutes in an eight hour workday.

(AR 15.)

At step four, the ALJ found that Plaintiff had no past relevant work experience. (AR 18 (citing 20 C.F.R. § 404.1565).) At step five, and upon consideration of Plaintiff's age, education, work experience, and RFC and the testimony of the vocational expert at the August 17, 2023 hearing, the ALJ found that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (AR 19 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) Accordingly, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 15, 1999, the alleged onset date, through December 31, 2004, the date last insured." (*Id.* (citing 20 C.F.R. § 404.1520(g)).)

On July 18, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1–5.) In the written notification, the Appeals Council stated that Plaintiff's proposed reasons for why she disagreed with the ALJ's decision provided no basis to alter the ALJ's decision. (*Id.*)

9

## III. STANDARD OF REVIEW

In reviewing a Social Security disability decision, the Court is limited to determining whether the Commissioner applied the proper legal standard in evaluating the evidence and whether substantial evidence in the record supports the decision to deny benefits. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting the substantial evidence standard is "more than a mere scintilla," but "is not high"). "While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, 42 U.S.C. § 405(b)(1), there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotation marks omitted).

When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2). "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ).'" *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th

Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by using an improper standard or misapplying the law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). Thus, reversing the denial of benefits is appropriate only if either (1) the record lacks substantial evidence supporting the ALJ's determination, or (2) the ALJ made an error of law. *Id.*

## IV.    ANALYSIS

As Plaintiff is a *pro se* litigant, the Court liberally construes her filings to identify her claims. *See United States v. Gholson*, 33 F. App'x 80, 81 (4th Cir. 2002) (observing that courts "must liberally construe the claims of *pro se* litigants" (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982))). In the form Complaint, Plaintiff checked the boxes indicating that the Commissioner's factual findings are unsupported by the record, and that the Commissioner's decision was based on legal error. (Dkt. No. 1 at 3.) Plaintiff alleges that "[t]he ALJ developed evidence that ZERO jobs are available yet used vastly different numbers in his decision." (*Id.*) Plaintiff also alleges that the ALJ relied on irrelevant evidence (e.g., Plaintiff's "being ACCEPTED by the Navy's flight program decades ago without acknowledging washing out a year into it given the previous Army TBI's that precluded flying"), and that "it has to be legally incorrect to find a person INSURED with multiple serious disabling conditions, no work history since last leaving the military, but deny benefits." (*Id.*) As relief, Plaintiff checked the boxes for "monthly maximum insurance benefits to the plaintiff, retroactive to the date of initial disability" and, in the alternative, "remand to the defendant for reconsideration of the evidence." (*Id.* at 3–4.) The undersigned construes Plaintiff's Complaint as challenging the ALJ's RFC determination and step five findings.

In the Motion for Summary Judgment, Plaintiff requests that the Court "reverse the ALJ's unfavorable decision of August 17th, 2023 and grant [her] SSDI benefits dating back to [her] departure from active duty within the Coast Guard in late 1999." (Dkt. No. 4 at 2.) In support, Plaintiff asserts that the ALJ "found four severe impairments," but when he "sat down to write [the decision], he must have forgotten taking the VR expert through three hypotheticals in which [Plaintiff] would be expected to be off task not just 5% or 10% of the time [], but 15% [], which . . . would make [Plaintiff] unemployable . . . ." (Dkt. No. 4 at 2.) Plaintiff further asserts that the ALJ "made significant errors and omissions in the decision," including, for example, "wrongly highlighting [Plaintiff's] being accepted by the Navy's flight program in 1995" and "discounting" the fact that Plaintiff's fistula "was a large part of why" she failed out of the Navy's flight program in 1996. (*Id.*) Additionally, Plaintiff argues that the ALJ ignored Plaintiff's bar exam failure notices in 1994 and 1995, gave "no weight to the recent Richmond VA low vision doctor's letter," and could not comprehend that Plaintiff walks her dog and gardens "not as a true hobby," but to give herself "vision breaks nearly hourly when forced to use a computer." (*Id.*) As noted above, the undersigned construes Plaintiff's arguments as generally challenging the ALJ's RFC and step five findings for lack of substantial evidence.[7] In response, Defendant argues that the ALJ's RFC and step five findings were supported by substantial evidence. (Dkt. No. 8 at 9.)

The RFC determination is an agency-conducted administrative assessment that considers all relevant medical and other evidence. *Caulkins v. Kijakazi*, No. 20-1060, 2022 WL 1768856,

---

[7] In the Complaint, Plaintiff also claims that the ALJ's decision was based on legal error because "it has to be legally incorrect to find a person INSURED with multiple serious disabling conditions, no work history since last leaving the military, but deny benefits." (Dkt. No. 1 at 3–4.) In the Motion for Summary Judgment, however, Plaintiff acknowledges that "[t]he timing of my VA 100% rating seems to have confused [the ALJ] . . . but I just realized none of the paperwork from VA relating to that appears to be in the record." (Dkt. No. 4 at 2.) Accordingly, the undersigned does not address Plaintiff's legal error claim.

at *5 (4th Cir. June 1, 2022) (citing 20 C.F.R. § 416.945(a)(3)); *see also* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). The RFC describes "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting . . . 8 hours a day, for 5 days a week . . . ." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The second component requires the ALJ to "build an accurate and logical bridge" from the evidence in the record to his RFC conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). That bridge does not need to be perfectly crafted and "specifically refer to every piece of evidence," *Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014) (cleaned up), but it does need to allow for "meaningful review," *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The ALJ then uses the RFC to determine whether the claimant can perform her past relevant work (step four), and whether the claimant can adjust to any other work existing in the national economy (step five). 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5).

In addressing Plaintiff's functioning prior to December 31, 2004, the date last insured, the ALJ considered Plaintiff's medically determinable impairments (i.e., traumatic brain injury in 1985, chronic fatigue syndrome, history of perianal fistula status-post resection, and light and peripheral motion sensitivity). *See* SSR 96-8p, 1996 WL 374184, at *2 ("[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."). The ALJ found that Plaintiff possessed an RFC for a full range of work with occasional sitting; no climbing ladders, ropes, or scaffolds; avoiding machinery on the work floor and unprotected heights; no driving in the work setting; being off-task up to five percent of any given workday due to fatigue and focus issues; and looking at a computer screen for no more than

30 minutes in an eight-hour workday. (AR 15.) The ALJ further found that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (AR 19.)

In making the RFC determination, the ALJ found that the record "simply does not reflect *significant* restrictions" during the relevant period of December 15, 1999 through December 31, 2004. (AR 17 (emphasis added); *see also* AR 18 ("[Plaintiff's] allegations of greater restrictions are not entirely consistent with the adopted residual functional capacity because they are not supported by the conservative and grossly outpatient treatment history during the period at issue, the clinical and examination findings of no acute complications, and [Plaintiff's] stated ongoing capabilities.").) While the evidence reflected Plaintiff's "history of a traumatic brain injury" incurred in 1985, Plaintiff "subsequently returned to a rather remarkable history of full-time academics and employment with the military," including "qualifying for flight training" and graduating from law school. (AR 17.) Moreover, Plaintiff's "long-standing history of fistula did not prevent her from flying planes with the Coast Guard in 1999." (*Id.*) Accordingly, as noted by the ALJ, the "only real treatment during the period at issue [was] for chronic fatigue syndrome, and that was on an entirely conservative, routine, and outpatient basis."[8] (*Id.*) While Plaintiff "endorsed nightmares as a side effect of her medication [and] ... some issues with falling asleep during the day," Plaintiff's "physical examinations were otherwise non-focal."[9] (AR 17–18.) As to Plaintiff's vision issues, "[e]ven when accounting for [Plaintiff's] endorsed visual

---

[8] Specifically, Plaintiff was treated with Zoloft and over-the-counter Motrin. (AR 970, 974.)

[9] The record reflects that although Plaintiff reported in May 2000 that her fatigue symptoms had exacerbated and that she still had side effects from Zoloft despite decreasing the dose, (AR 435–36), the physical examination findings demonstrated that Plaintiff had 5/5 strength and a steady gait. (AR 436.)

14

complications, the record reflects that her acuity was correctable to 20/20."[10] (AR 18; *see also* AR 581.)

The ALJ then "adopted restrictions . . . to account for [Plaintiff's] endorsed symptoms." (AR 18.) To account for Plaintiff's fistula, the ALJ adopted a restriction limiting Plaintiff to "occasional sitting." (*Id.*) As to Plaintiff's vision issues, chronic fatigue, and history of brain injury, the ALJ adopted a restriction "prohibit[ing] jobs with ladders, ropes, scaffolds, machinery on the work floor, unprotected heights, and driving in a work setting." (*Id.*) Further, to account for Plaintiff's testimony during the August 17, 2023 hearing, the ALJ found that Plaintiff "would be off task 5% during a regular workday" and adopted a restriction "prohibit[ing] [Plaintiff] from more than 30 minutes of screen time at one time." (*Id.*)

The ALJ also considered Plaintiff's symptoms "and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as the medical opinions and prior administrative medical findings. (AR 15); 20 C.F.R. §§ 404.1520c, 404.1529. As to Plaintiff's endorsed symptoms, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (AR 16.) The ALJ noted, for example, that "[o]n a typical day, [Plaintiff] will assist with household chores, swim when she is able to do so, water her plants, and communicate with her sister." (*Id.*) As to the medical opinions and prior administrative medical findings, the ALJ found the assessments of Drs. Koch and Spetzler "not fully persuasive, as the records and

---

[10] During the August 17, 2023 hearing, Plaintiff testified that her vision issues did not occur during the relevant period. (AR 85.) Specifically, Plaintiff testified that "the vision stuff wasn't really noticeable until later, not 1999 to 2004 …." (*Id.*)

testimony that [Plaintiff] provided at the hearing level are more consistent with the non-exertional restrictions in the adopted residual functional capacity." (AR 18.)

The undersigned finds that the ALJ created "an accurate and logical bridge" between the evidence and his conclusions in the RFC determination, and that the RFC determination and the ALJ's step five findings are supported by substantial evidence and in accord with applicable law and regulation. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## V.     RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 4), **GRANT** Defendant's Motion for Summary Judgment (Dkt. No. 7), and **AFFIRM** the final decision of the Commissioner.

## VI.     NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to object within fourteen (14) days after being served with a copy of this Report and Recommendation may result in the waiver of any right to a *de novo* review of this Report and Recommendation and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the district judge except upon grounds of plain error.

**ENTERED** this 5th day of September, 2025.

/s/ LRV
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia